831 So.2d 307 (2002)
Tammy TORTORICH and Larry Connelly
v.
OTIS ELEVATOR COMPANY, INC., Dillard Department Stores, Inc. and ABC Insurance Company.
No. 02-CA-275.
Court of Appeal of Louisiana, Fifth Circuit.
October 16, 2002.
*308 Jim S. Hall, Jim S. Hall & Associates, Metairie, LA, for plaintiffs-appellants.
J. Ren Williams, Lazarus, Brown and Williams, Houma, LA, for defendant-appelleeDillard Department Stores, Inc.
Panel composed of Judges EDWARD A. DUFRESNE JR., CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
CLARENCE E. McMANUS, Judge.
This matter was tried before a twelve-person jury on July 16, 2001. Following deliberation, judgment was rendered in favor of Dillard Department Stores, Inc. against Vincent Totorich as representative of the succession of Tammy Tortorich[1] and Larry Connelly, rejecting their claims that they sustained injuries while using an escalator in a Dillard Department Store. We affirm.

FACTS AND PROCEDURAL HISTORY
Plaintiffs' petition for damages alleged that on June 5, 1996, Tammy Tortorich and her boyfriend, Larry Connelly, were using an escalator inside Dillard Department Store at Lakeside Shopping Center in Metairie when the "moving parts of the escalator grabbed Ms. Tortorich's shoe and pulled her foot into the moving parts of the escalator." Larry Connelly contended that he fell onto the escalator's moving parts as he attempted to help Ms. Tortorich. Following the incident, plaintiffs, Ms. Tortorich and Mr. Connelly, instituted both a La.Civ.Code art. 2315 tort suit and a La.Civ.Code art. 2317 strict liability suit against Dillards, its insurer, and Otis Elevator Co. (Otis), the company which manufactured, installed, and maintained the escalator. In January 1997, Otis was dismissed from this case.
*309 After a two-day jury trial, the jury found that Dillard's was not negligent in causing the escalator accident as to either Tammy Tortorich or Larry Connelly. At trial, plaintiffs relied upon the deposition testimony of Ms. Tortorich and the live testimony of Mr. Connelly among others. In her deposition, Ms. Tortorich stated that she was an NOPD officer for fifteen years but at the time of this incident was on extended sick leave after she was injured while trying to break up a fight in front of the police station. Her injuries consisted of a pulled back and a torn intestine (hiatal hernia). She underwent surgery to repair the hernia.
She described the escalator incident in the following manner. Mr. Connelly was a couple of steps below her. She had her right hand on the rail and her left hand on her cane. As the escalator carried them down from the third to second floor, her right foot (up near her little toe) got caught in the tracks causing her to fall backward and hit her head and lower back on the steps. Mr. Connelly fell on top of her as he tried to help her up. She stated that her hair and clothing were being grabbed by the escalator. Additionally, she lost a diamond earring and a sapphire and diamond bracelet during the fall.
Mr. Connelly testified that he was in front of Ms. Tortorich on the escalator and turned around to help her when she screamed for him. He did not observe any type of noise or vibration on the escalator prior to her fall. He fell and hit his left knee on the escalator while trying to extricate her from the escalator. He observed that Ms. Tortorich's right shoe had a tear on it, her foot had a big red scratch, her back was bruised and his knee was swollen. He did not hear Ms. Tortorich tell anyone at Dillards about her missing jewelry. In fact, he did not learn of the missing jewelry until after they left the store.
Janice Stulak, the Dillard's manager on duty the night of the incident, testified that Ms. Tortorich told her that her foot got caught in the escalator causing her to fall. However, Ms. Tortorich did not mention what her foot may have gotten caught on or that she was missing any jewelry. Ms. Stulak filled out an accident report but had no film to take pictures. She noticed a mark on Ms. Tortorich's arm and a mark on the heel of shoe. Ms. Tortorich and Mr. Connelly declined medical attention at that time.
Dr. Richard Meyer, an orthopedic surgeon, testified that he examined both parties after the incident. He saw Ms. Tortorich three times for her neck and lower back pain. She related that she had previously been treated for a hiatal hernia and for TMJ. Dr. Meyer first saw Mr. Connelly in 1994 for a lower back injury. Dr. Meyer next saw Mr. Connelly after this accident who complained of left knee pain. Dr. Meyer observed some swelling of the knee and ordered an MRI. The MRI was negative for any ligament tearing. Another MRI was ordered sometime later and it confirmed two tears in Mr. Connelly's left knee. Dr. Meyer recommended surgery. Mr. Connelly eventually underwent surgery at the VA Hospital. Dr. Meyer did not perform this surgery. His treating physician from the VA Hospital did not testify via deposition or at trial.
Dr. Ralph Gessner testified that he first saw Ms. Tortorich in 1982. At that time, she presented with neck and lower back pain. Dr. Gessner described Ms. Tortorich as an NOPD officer who was frequently injured. He noted that she had a history of a hiatal hernia and problems with her lower left extremity prior to this incident for which she used a cane. MRIs *310 of her neck and lower back taken before and after this accident were normal.
Mr. Dennis Mire, the Dillard's escalator/elevator engineer, testified that he inspected the escalator in May 1996, that it had no loose or missing screws and that this escalator always operated within its designated specifications and never had a problem with loose or missing screws. However, at this particular inspection, he did not apply any friction reducing agent to the escalator. Mr. Charles Vicknair, a private investigator for plaintiffs, testified that he videotaped the escalator in June 1999 and observed five or six missing screws on the right side of the escalator between the step and the wall.
Plaintiffs' expert, Dr. Jeffrey Ketchman, indicated that he thought there were several factors which contributed to this incident: Ms. Tortorich's shoe got caught on a protruding screw which had vibrated loose; the escalator skirts were not properly lubricated with a friction reducing agent; and that the positioning of her foot on the step caused her shoe to come in contact with a protruding screw.
Defendant presented the testimony of their expert, David Steel. Mr. Steel disagreed with Dr. Ketchman's theory that a protruding screw caught Ms. Tortorich's shoe and caused her to fall. Mr. Steel also disagreed with Dr. Ketchman's belief that Ms. Tortorich's foot must have been off of the edge of the step and was caught by the screw. Mr. Steel reasoned that it would be unnatural for Ms. Tortorich while using a cane to place her foot far enough off of the step to catch onto a nearby screw. Moreover, Mr. Steel believed Dr. Ketchman posed too many conditions precedent in order for the incident to happen in that manner. Mr. Steel inspected the escalator and found there were five screws missing on the right and three missing on the left of the molding strip. However, there were no loose or protruding screws, and the missing screws did not present a potentially hazardous situation. Moreover, based on his thirty-nine years experience with Otis nation-wide and world-wide, he has never encountered a situation where an escalator screw has worked itself loose from the molding strip. He noted that this particular escalator does not require lubrication on the skirt panel as Dr. Ketchman indicated and Dillards would not be improperly maintaining the escalator by failing to do so. Regarding Dr. Ketchman's theory that the side skirt molding of the escalator was peeling, Mr. Steel stated that the molding is a thick piece of steel not susceptible to peeling rather than a thin layer of steel. Mr. Steel opined that Ms. Tortorich probably slipped off of the step which caused her to fall backwards.
The jury found Ms. Tortorich 100% at fault in this accident and did not agree that she sustained any injuries. Likewise, the jury did not agree that Mr. Connelly suffered any injuries as a result of the accident. Consequently, the jury awarded no damages to either plaintiff in this case. Thereafter, plaintiffs filed a motion for JNOV. Judge Jo Ellen Grant denied the motion. This appeal followed.

DISCUSSION
Plaintiffs assert that the jury was clearly wrong and committed manifest error when it found Dillard Department Stores was not negligent in this case. Thus, a new trial should have been granted. They contend that they were injured by a thing; that the thing was in defendant's custody; that there was a vice or defect creating an unreasonable risk of harm in the thing; and that their injuries arose from that danger.
In a negligence action under article 2315, the plaintiffs bear the burden of proving fault, causation and damages. *311 Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70. A court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Brandt v. Engle, 00-3416 (La.6/29/01), 791 So.2d 614. Thus, to reverse a trial court, the appellate court must find from the record that a reasonable factual basis does not exist for the finding and, further, that the finding is clearly wrong. Id.
In this case, the jury was presented with the conflicting expert testimony of experts as to what caused Ms. Tortorich to fall on the escalator, and inconclusive medical history. Where the testimony of expert witnesses differ, it is the responsibility of the trier of fact to determine which evidence is most credible. Mistich v. Volkswagen of Germany, Inc., 95-0939 (La.1/29/96), 666 So.2d 1073. Our review of the record indicates to us that Mr. Steel had extensive expertise in escalator engineering based on thirty-nine years with Otis Elevator. He provided the jury with a clear and more knowledgeable understanding of how this escalators and escalators in general operate and apparently demonstrated to them that the incident did not occur as plaintiffs and Dr. Ketchman indicated. Thus, it was not erroneous for the jury to find his testimony more credible that Dr. Ketchman's testimony. Moreover, plaintiffs medical records did not conclusively demonstrate that they suffered injuries related to this incident.

CONCLUSION
On this record, we find that a reasonable factual basis exists to support the jury's finding that Ms. Tortorich was 100% at fault in this accident and that she and Mr. Connelly did not sustain any damages as a result of the incident on the escalator. In making that determination, we have closely reviewed the record to determine whether the jury's verdict was contrary to the law and evidence and find that the verdict is supported by a fair interpretation of the evidence. We further conclude that the jury's verdict was reasonably based on the evidence presented at trial and plaintiffs were not entitled to JNOV or a new trial. For the foregoing reasons, we affirm the jury verdict and trial court judgment denying plaintiffs' motion for a JNOV.
AFFIRMED.
NOTES
[1] In May 1998, Ms. Tortorich died of causes unrelated to this accident. Her succession representative, Vincent Tortorich, was substituted as a party in her place.