MARION F. EDWARDS, Judge.
Plaintiff/appellant Jocelyn Wegmann Quinn appeals a verdict and ensuing judgment of the trial court dismissing her suit against defendants GGS, L.L.C. d/b/a/ Magnolia Shopping Center and Lafayette Insurance Company (Hereinafter “Magnolia”). She also appeals the denial of her Motion For Summary Judgment shortly before trial on the merits took place. We affirm.
Mrs. Quinn testified that she is an employee at the gift shop at Ochsner Foundation Hospital. On November 22, 2000, she left her job at the end of her work day and drove to a nail salon at Magnolia Shopping Center, a place that she frequents. It was almost five o’clock and it was dusk. The area where she parked her car, in a handicapped space next to some mailboxes, was shaded. The nail salon is next to a post office branch. Mrs. Quinn got out of her automobile, walked around to the trunk to put . her purse inside, and then walked across a traffic area to get to the shopping center walkway. She took a few steps, glancing to check for oncoming traffic. On cross-examination, it was pointed out that she had stated in deposition that there were no cars passing, and that the street was clear. However, she testified at trial that she looked left and right, and that two cars passed. She continued to walk, but did not see a hole in the pavement. She traveled in a diagonal direction between the mailboxes and the handicap ramp, when her foot hit something and she tripped. She did not remember taking another step before hitting her arm and shoulder on a concrete post. On the day in question, she had no trouble walking, but had a handicap sticker on her vehicle because she has bursitis, which gives her pain in her hip. Although she looked around generally in the direction that she walked, she was not looking for pot holes on the parking surface. There was no object, such as a car, blocking her view of the pothole.
It did not feel like she had stepped into a pothole, but rather she tripped over the outer edge with her right toe and stumbled, falling almost instantly. Her head was between the right post and the flagpole, and the ramp was in front of her. She goes to the nail salon every two to three weeks, and had not seen the hole before.
Mrs. Quinn’s husband, Terry Quinn, testified that at a little after five o’clock on the day of the accident, he received a phone call telling him about the accident. He arrived at the scene about ten minutes later, and it was turning dark. Mrs. Quinn was lying on the ground moaning and crying. Her head was not close to the concrete posts, but she was relatively close to the hole. Shortly thereafter, two emergency medical technicians helped his wife into the ambulance. It was not easy to see the hole because it was dark, but he believed she tripped on it because of where she was on the ground. He did not recall if there were lights on in the parking lot. *327 The hole was very close to the fire lane. Mr. Quinn took photographs of the area, including the hole, on the following day.
Mr. Wilfred Gallardo was qualified as an expert in safety and accident cause analysis. He testified that he reviewed a number of photographs of the accident scene, the scene itself, and Mrs. Quinn’s deposition. He could not measure the hole at the site because of patches. Looking at the pictures, Mr. Gallardo thought the hole was between 4 and 6 feet from the fire lane, or 9-10 feet from the flagpole. Mr. Gallardo opined that the primary cause of the accident was that the hole could not be seen clearly because it tended to blend in, and dusk made it even harder to see. He felt that Mrs. Quinn hit the hole in such a way as to cause her to stumble, and her momentum kept her going. He did not know how many steps she would have taken, stumbling, before she hit the post. At the site, traffic came from the right. It was unlikely, considering the direction in which she was headed, that she tripped over the handicap ramp near where she parked. If she had caught her foot on the ramp she would have been propelled in the other direction. The hole was there in excess of 3 months, and because he also shopped there, Gallardo was aware of holes in the area. It would cost less than one hundred dollars to repair the hole. It was prudent for Mrs. Quinn to look to her left, and not to look at the parking surface because her main concern would be oncoming traffic, and to look in the direction in which she was headed. At the time of day of the accident, the area would have been very shaded.
Charles Wendell, Manger of Magnolia Shopping Center, testified that he inspects the parking lot as does his maintenance employee. When several potholes are discovered, he notifies a repair service, Boh Brothers Construction Company. Further, sections of the parking lot are resurfaced on an annual basis, so that the entire lot is repaved every two years. The Post Office has anywhere between 350 and 400 people on a busy day. There were no complaints prior to the accident of any problems in the parking lot. Lights in the lot go on every day at 5:00 p.m. in the fall, including the area near the Post Office.
Mr. Gene Moody, a professional engineer, was qualified as an expert in the field of accident reconstruction, forensic engineering and safety engineering. He reviewed the Motion for Summary Judgment with its accompanying affidavits; the report of Mr. Gallardo; responses to interrogatories; the Boh Brothers Construction Company file; the deposition of Mrs. Quinn; and photographs of the site. He also visited the site twice. He prepared a scale drawing of the area after taking measurements. The actual hole had been patched by the time Mr. Moody viewed the scene. Using measurements, topographic features, and from the photographs taken by Mr. Quinn, Mr. Moody located the approximate location of the pothole, and the distance from the hole to the concrete barrier posts. He determined that the distance of the hole to the posts was approximately 9 feet. From the handicap ramp to the sidewalk area was about five feet.
According to the witness, Mrs. Quinn may have lost her balance because of her physical condition, as in her deposition she stated that she had pain when she walked. Alternatively, she either tripped over the handicap ramp or lost her balance in the pothole. It is not prudent for a pedestrian to walk across a parking lot without ever looking at the surface. The hole was not unreasonably dangerous for a pedestrian who looks, and she would have seen it with her peripheral vision. Based on the testimony that Mrs. Quinn had no sensation of *328 having stepped into a hole, and did not take any further steps after she tripped, but rather fell instantly, it was most likely that she hit the 90 degree edge of the elevated handicap ramp, tripped, and hit the posts. She was traveling in a diagonal direction toward the nail salon, and had she hit the hole with her right foot, as she testified, her momentum would have caused her to fall in the driveway, and she would not have immediately hit the posts. If she hit the post instantaneously, she had to have been close to it. One typically falls in the direction of their momentum.
There was a distinction in coloration at the hole, so at dusk, Mrs. Quinn would have been able to see the hole if she had been looking. He testified that if Mrs. Quinn put her purse in her trunk, then turned and went straight across on a diagonal toward the nail salon, she would certainly have seen the handicap ramp and would have been able to go around it unless she got too close.
Because Mrs. Quinn is 5'9" tall, and the post is 4 feet tall, she would have been in a standing position after she tripped, and therefore, she must have been close to the object on which she tripped. She would then tend to fall down near the base of the post and the handicap ramp. If someone hit one of the poles, he would expect to find them lying near the poles and the ramp. If she had tripped on the hole, which was perpendicular to the post, she would not have hit the post in the standing up position but would have fallen down before reaching the posts.
In addition to Mrs. Quinn’s Motion For Summary Judgment, Magnolia filed its own- Motion, which was also denied, upon the court’s determination that the location of the hole was an issue of fact and denied both motions.
Following trial on the merits, the jury returned a verdict finding that the pot hole was a defect that presented an unreasonable risk of harm, but that it was not the legal cause of the accident. As a result, the trial court dismissed the Quinn petition, and it is from this verdict and judgment that Mrs. Quinn appeals.
There are two theories of liability available to a plaintiff who claims she was injured as a result of the condition of a thing: negligence, under La. C.C. arts. 2315 and 2316, and strict liability, under La. C.C. art. 2317. Under both theories of liability a plaintiff must prove that the condition of the thing presented an unreasonable risk of harm, or was defective, and that this condition of the thing was a cause-in-fact of her injuries.[1] Both theories are analyzed under the duty/risk analysis.[2] The duty-risk analysis is employed on a case by case basis.[3] Plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of the harm was within the scope of the protection afforded by the duty breached.[4]
*329 The initial inquiry to determine if a party may be liable under the duty-risk analysis is cause-in-fact. The plaintiff must prove that the alleged defect in the thing was a cause-in-fact of the plaintiffs harm. A party’s conduct is a cause-in-fact of the harm if it was a substantial factor in bringing about the harm. For example, the act is a cause-in-fact in bringing about the injury when the harm would not have occurred without it. While a party’s conduct does not have to be the sole cause of the harm, it is a necessary antecedent essential to an assessment of liability. Whether an action is the cause-in-fact of the harm is essentially a factual determination that is usually left for the factfinder.[5]
A trial court’s findings of fact will not be disturbed unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous.[6] Where two reasonable views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.[7] The issue to be resolved by the reviewing court is not whether the trier of fact is right or wrong, but whether the factfinder’s conclusion was a reasonable one.[8]
[T]he reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.[9]
Mrs. Quinn urges the court committed error in denying her Motion for Summary Judgment, and further urges the portion of the verdict holding that the pothole was not a legal cause of the accident was manifestly erroneous.
There were no witnesses to the accident in question. Further, the case does not appear to turn on a determination of Mr. or Mrs. Quinn’s credibility, inasmuch as all she was certain of was that she tripped and fell, hitting the posts. Mr. Quinn opined that his wife tripped on the hole because of its proximity to where Mrs. Quinn lay on the ground.
Proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not.[10]
Circumstantial evidence is defined as evidence of facts or circumstances from which one might infer or conclude the *330 existence of other connected facts. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. LA.CODE EVID. art. 302(4) defines an inference as “a conclusion that an evidentiary fact exists based on the establishment of a predicate fact.” Circumstantial evidence may be as persuasive as testimonial or direct evidence in providing a compelling demonstration of the existence or nonexistence of a fact at issue.[11]
Based on the evidence before the jury, we cannot conclude that Mrs. Quinn proved that the hole was a legal cause of her injury, that is, that she tripped on it, by a preponderance of either direct or circumstantial evidence. Although Mrs. Quinn denied that she walked in the direction of the handicap ramp and “clipped” it, she never saw the hole in question, either before or right after the accident. When asked how she knew she stepped in a hole, she testified that she tripped, and that it felt like her toe hit the tip of the hole. She never had the sensation of having stepped into a hole, but rather stumbled on something.
On review, it appears that the jury found the conclusion of Magnolia’s expert more convincing than that of Mrs. Quinn’s expert. Where the testimony of expert witnesses differ, it is the responsibility of the trier of fact to determine which evidence is most credible.[12] Ultimately, the weight to be given expert testimony is dependent upon the facts on which it is based, as well as the professional qualifications and experience of the expert. For an expert opinion to be valid and to merit much weight, the facts on which it is based must be substantiated by the record.[13]
Our review indicates that Mr. Moody had extensive experience in accident reconstruction and safety engineering, and that he was familiar with the theory of whether a pothole is dangerous by reconstruction of an accident. His opinion that Mrs. Quinn tripped on the handicap ramp rather than the pothole was based on measurements which he himself took at the scene. Although Mr. Gallardo was qualified in accident safety analysis, we cannot say that the jury abused its discretion in granting more weight to the opinion of Mr. Moody.
The court was thus also correct in denying summary judgment in favor of Mrs. Quinn.
On this record, we find that a reasonable factual basis exists to support the jury’s finding that the pothole was not a legal cause of Mrs. Quinn’s accident. For the foregoing reasons, the verdict and judgment are affirmed, as is the denial of summary judgment. Mrs. Quinn is assessed costs of this appeal.

AFFIRMED.

. Seal v. State Farm Fire & Cos. Co., 2000-2375 (La.App. 4 Cir. 3/20/02), 816 So.2d 868, writ denied 2002-1083 (La.6/14/02), 817 So.2d 1160; Reaux v. Louisiana Bd. Of Medical Examiners 2002-0906 (La.App. 4 Cir. 5/21/03), 850 So.2d 723, writ denied 2003-1165 (La.6/20/03), 847 So.2d 1237.

. Schreiber v. Jewish Federation of Greater New Orleans, 2002-0992 (La.App. 4 Cir. 1/29/02), 839 So.2d 51, writ denied 2003-0613 (La.6/6/03), 845 So.2d 1089.

. Daye v. General Motors Corp., 1997-1653 (La.9/9/98), 720 So.2d 654.

. Daye, supra; Reinhardt v. Great Atlantic & Pacific Tea Co., Inc. 02-319 (La.App. 5 Cir. 9/30/02), 829 So.2d 600.

. Lasyone v. Kansas City Southern R.R., 2000-2628 (La.4/3/01), 786 So.2d 682, citations omitted.

. Syrie v. Schilhab, 96-1027 (La.5/20/97); 693 So.2d 1173, 1176; Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 745; Stobart v. State, Through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993).

. Stobart, supra.

. Syrie, supra.

. Pinsonneault v. Merchants & Farmers Bank & Trust Co., 2001-2217 (La.4/3/02), 816 So.2d 270, citing Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973).

. Joseph v. Broussard Rice Mill, Inc., 2000-0628 (La. 10/30/00), 772 So.2d 94.

. Id.

. Mistich v. Volkswagen of Germany, Inc., 95-0939 (La. 1/29/96), 666 So.2d 1073; Tortorich v. Otis Elevator Co., Inc., 02-275 (La.App. 5 Cir. 10/16/02), 831 So.2d 307.

. Glass v. Magnolia School, Inc., 01-1209 (La.App. 5 Cir. 3/13/02), 815 So.2d 143, writ denied 2002-1048 (La.6/7/02), 818 So.2d 776.