MADELINE JASMINE, Judge Pro Tempore.
 

 |2In this slip and fall case, plaintiff/appellant, Harold Hensarling, appeals a trial court judgment, following a bench trial, finding no liability on the part of defendant, Dyke Industries, Inc. (Dyke).
 

 On appeal, Hensarling argues that the trial court was manifestly erroneous in its finding that the exterior stairs at Dyke did not present an unreasonable risk of harm and did not contain a defect that was a proximate cause of appellant’s injuries and damages. He asks this Court to reverse the trial court’s judgment, find liability on behalf of Dyke, and award plaintiff damages.
 

 The record testimony and evidence show that plaintiff fell on exterior stairs as he was leaving Dyke Industries, where he had gone with his grandson to purchase building materials for a carpentry job. Plaintiff was 73 at the time of the accident on August 21, 2006, which occurred at approximately 9:00 a.m. Plaintiff |3had a history of osteogenesis imperfecta, which was described as a bone disease that made his bones susceptible to fractures.
 
 [1]
 

 The stairway in question consisted of a left and right stairway with a landing at the top that paralleled the building’s entrance, rather than protruded from it. The photographs in evidence, as well as the various testimonies, showed that the stairs, which were approximately 67" wide, contained no handrail on either side. The stairs, on either side, ended in a concrete landing that measured the same width as the stairs and approximately 41" long with an approximately six inch drop or step to the parking lot.
 

 At trial, plaintiff, Hensarling, testified that on the day of his slip and fall, he was accompanying Kyle Wilson
 
 [2]
 
 to Dyke to purchase some building materials. Their truck was parked in the parking lot in close proximity to the stairs. He testified that he had been to Dyke several times before, and had gone up and down the stairs with no problem and without falling.
 
 *522
 
 That morning, he had gone inside to get the receipt for the materials, ascending the stairs with no problem. He came down the stairs, with his left hand on top of the concrete wall that separated the stairs from the parking lot. He testified that he fell as he stepped off the landing, or what was also described by plaintiffs expert as an “elongated step,” into the parking lot. He said that he fell because he thought he was in the parking lot, not on the landing. Plaintiff testified that the landing was not uneven, nor was there any liquid on it, and that lighting was not a problem. Plaintiff denied breaking his leg first and falling as a result; he stated that he broke his leg as a result of taking the mis-step from the landing to the parking lot.
 

 1¿Plaintiff testified that he had suffered a previous fracture in this leg, his right, approximately twenty years previously. He admitted to several other bone fractures, but denied having “twenty or more.” Plaintiffs medical records showed that he had been prescribed the pain medicine Vi-codin on several occasions in the past for pain associated with arthritis and osteoporosis.
 
 [3]
 
 Plaintiff was also confused when shown that his medical records indicated several past compression fractures of his vertebrae.
 

 Mr. Hensarling testified that pi'ior to this slip and fall, he lived alone, and was able to take care of his daily needs without help, though he no longer drove. However, following the accident, plaintiff underwent surgery on his leg to implant a rod and remove the plate and screws that were used to repair his bone in the previous fracture twenty years before. In addition, plaintiff testified that he needed a second surgery to replace the original rod, which was ill-fitting, and he spent several weeks in a residential rehabilitation facility before he could return home. Since that time, Mr. Hensarling has employed his grandson to live with him and help him with personal tasks such as bathing, cooking, and housework, which he could no longer perform.
 

 At trial, Wilfred Gallardo testified for the plaintiff as an expert safety consultant. He testified that he inspected the stairs and found that they failed to comply with various building codes
 
 [4]
 
 because they did not have handrails. He opined that the concrete wall was not a proper substitute for a handrail. He also found that the riser height and tread length of the stairs did not comply with the codes.
 

 |sMr. Gallardo called the bottom landing an “elongated step” and opined that it was actually a part of the staircase, and thus subject to the code requirements for stairs. He also found that it did not comply with the code requirements for landings regarding dimensions.
 

 In Mr. Gallardo’s opinion, the plaintiff fell because he thought the landing was at the same level as the parking lot.
 
 [5]
 
 In his opinion, the elongated step being the same color as the parking lot created a “camouflage” effect that failed to put the plaintiff on notice that there would be an elevation
 
 *523
 
 change. He did note that there was no code requirement to paint the stairs or the landing any different color from any adjacent stair or landing.
 

 Kyle Wilson testified that he accompanied his grandfather to Dyke that day, but had his back to the stairs when plaintiff fell. Wilson did not witness the fall. He testified that he now lives with his grandfather and helps him with the tasks of daily living that he can no longer perform himself, such as bathing and housekeeping. Wilson testified that his grandfather paid him $400.00 per week to help him.
 

 In the defense’s case, Mr. Allison Lau-ney testified as an expert licensed civil engineer. He went to the site, took measurements, researched the applicable building codes, took photos, and reviewed the deposition testimony. He agreed that the absence of a handrail on the stairs was a deficiency in the stairs that violated the codes, and agreed that a concrete wall was no substitute for a handrail, but he found that the lack of a handrail did not contribute to the fall, as the fall occurred when plaintiff stepped from the landing to the parking lot, which, ^according to his interpretation of the codes, is beyond the point where any code required a handrail on a staircase.
 

 Mr. Launey felt that Mr. Gallardo, plaintiffs expert, misinterpreted the various codes regarding the requirements for a landing. Mr. Launey testified that the code is very specific in its requirements for landings where a door is located, but that the same code provisions do not apply to “bottom” landings where no door is located.
 

 Mr. Launey found that this landing was a valid use of a bottom landing, as it separated the pedestrians from the parking lot. He specifically found that the stair layout, landing, and parking lot were clearly visible and well-demarcated, both looking down the stairs and looking up the stairs. He disagreed with Mr. Gallardo that the bottom landing was camouflaged, and stated (as did Mr. Gallardo) that there are no requirements in the codes to paint steps differently from a bottom exterior landing or parking lot.
 

 On cross examination, Mr. Launey testified that he felt that plaintiff stumbled because of confusion about whether the parking lot was at the same elevation as the landing. Mr. Launey testified that the landing complied with the code requirements regarding its dimensions, but again reiterated that the code requirements regarding landings where doors open do not apply and are not used for bottom landings on exterior stairs where no door opens. He again noted that there are no code requirements to paint stairs and landings different colors.
 

 The court asked additional questions of Mr. Launey regarding the existence of specific code requirements and how Mr. Launey interpreted those code requirements. The record was held open for the reception of additional medical evidence, and the trial concluded.
 

 |7In her Judgment and Reasons, the trial court clearly gave more weight to the testimony of defendant’s expert, Mr. Launey, as noted below:
 

 After reviewing the testimony and exhibits presented at trial, we hold that Mr. Hensarling has failed to meet his burden of proving that the condition of the landing created an unreasonable dangerous condition which caused the injuries he alleges to have sustained. Much of the expert testimony presented related to the absence of handrails on the steps. We agree that the lack of a handrail constituted an unreasonably dangerous condition. However, there is nothing to indicate that this contributed
 
 *524
 
 to the accident. Although there was some confusion about the exact location of Mr. Hensarling’s fall, (especially on the part of the plaintiffs safety expert, Wilfred Gallardo) it was clear from Mr. Hensarling’s testimony that he fell from the landing to the parking lot, not from the steps to the landing. The Court was convinced by the testimony of Allison Sonny Launey, the defendant’s civil engineering expert, that no handrail was required in the area of the defendant’s fall because the landing is not considered a “step.” Even if the stairs had been equipped with a handrail, that rail would likely not have extended to the landing from which the plaintiff fell, and therefore its absence was not a cause his injuries.
 

 The plaintiffs expert also opined that the landing was deficient because it failed to meet the requirements for staircases. However, Mr. Gallardo’s testimony was based on his assertion that the landing was part of the staircase. He referred to it as an “elongated step” and cited to several safety regulations having to do with the rise and run/tread required for staircases. Mr. Gallardo’s testimony was substantially unpersuasive, including his conclusion that the landing should have met all safety requirements applicable to steps. We are again convinced by the testimony of Mr. Launey that the landing did not constitute a step. Mr. Launey testified that the regulations on tread size had no bearing on this accident because the landing on which Mr. Hensarling fell was separate from the stairs for regulatory purposes. He testified that generally, the purpose of this type of landing is to separate pedestrians entering the building from the loading zones of the parking lot. Additionally, even if the plaintiff had demonstrated that the safety regulations cited by Mr. Gallardo were applicable to the landing, there was no testimony to demonstrate that this contributed to the accident. Mr. Hensarling clearly testified that he fell because he did not distinguish the landing from the parking lot.
 

 Finally, Mr. Hensarling contends that the landing constituted an unreasonable risk of harm because it was not painted or marked so as to indicate a change in elevation. However, we find that the plaintiff has failed to make this showing. Mr. Launey testified that there was no parish or state law that required the landing be painted. The photographs of the accident site show that the demarcation between the landing and the parking lot was easily discernable. (Ex. PI 6, in globo). Additionally, there was also testimony that Mr. Hensarling had been to Dyke Industries before. He testified that he fell leaving |Rthe defendant’s business and that he was able to ascend the stairs without incident.
 

 For the forgoing reasons, Harold Hensarling’s claim for damages against Dyke Industries, Inc., is hereby DENIED.
 

 As this Court stated in
 
 Quinn v. GGS, L.L.C.,
 
 03-682 (La.App. 5 Cir. 12/9/03), 862 So.2d 324, 329, the following standard of review applies:
 

 There are two theories of liability available to a plaintiff who claims she was injured as a result of the condition of a thing: negligence, under La. C.C. arts. 2315 and 2316, and strict liability, under La. C.C. art. 2317. Under both theories of liability a plaintiff must prove that the condition of the thing presented an unreasonable risk of harm, or was defective, and that this condition of the thing was a cause-in-fact of her injuries, (cites omitted) Both theories are analyzed under the duty/risk analysis, (cites omitted) The duty-risk analysis is em
 
 *525
 
 ployed on a case by case basis, (cites omitted) Plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of the harm was within the scope of the protection afforded by the duty breached, (cites omitted)
 

 The initial inquiry to determine if a party may be liable under the duty-risk analysis is cause-in-fact. The plaintiff must prove that the alleged defect in the thing was a cause-in-fact of the plaintiffs harm. A party’s conduct is a cause-in-fact of the harm if it was a substantial factor in bringing about the harm. For example, the act is a cause-in-fact in bringing about the injury when the harm would not have occurred without it. While a party’s conduct does not have to be the sole cause of the harm, it is a necessary antecedent essential to an assessment of liability. Whether an action is the cause-in-fact of the harm is essentially a factual determination that is usually left for the factfinder, (cites omitted)
 

 A trial court’s findings of fact will not be disturbed unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous, (cites omitted) Where two reasonable views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong, (cites omitted) The issue to be resolved by the reviewing court is not whether the trier of fact is right or wrong, but whether the factfinder’s conclusion was a reasonable one. (cites omitted)
 

 [T]he reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and | conferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts, (cites omitted)
 

 Plaintiff/appellant argues, in two related Assignments of Error, that the trial court erred in finding that the lack of handrail was an unreasonably dangerous defect in the staircase, but that the lack of handrail was not a proximate cause of defendant’s fall. Appellant argues that the landing’s “camouflaged” appearance failed to allow him to recognize a change in elevation in order to properly and safely maneuver and descend the stairs.
 

 Both plaintiffs and defendant’s experts testified that the lack of handrail on the stairway was a defect that violated the applicable building codes. Mr. Hensarling testified that he fell as he stepped off the landing on to the parking lot. Thus, the trial court concluded, as did defendant’s expert, whose testimony the trial court clearly credited more than the plaintiffs expert, that the lack of handrail was not a factor in this accident. Plaintiffs expert characterized the landing as an “elongated step” and thus, opined that the code regulations pertinent to stairs applied to this landing, which he interpreted would require a handrail at this point. Defendant’s expert, however, interpreted the code regulations not to require a handrail from the landing to the parking lot, because he opined that the landing was not part of the stairs under applicable code regulations.
 
 *526
 
 The trial court credited the testimony of defendant’s expert and found that a handrail was not required by the codes where the plaintiff fell, and further found that plaintiff did not bear his burden of proof, even if the code did require a handrail at this location, because he testified that he fell because he did not distinguish the landing from the parking lot.
 

 | inAfter review of the record, we do not find the trial court’s conclusions manifestly erroneous. The trial court was free to credit the testimony and conclusions of one expert over the other. Further, plaintiffs testimony was clear that he fell as he stepped from the landing to the parking lot, which both experts considered.
 

 Both plaintiffs and defendant’s experts testified that no code regulation requires that the landing and stairs be painted a different color from each other, nor the parking lot. Defendant’s expert viewed the stairs and found them to be clearly visible and demarcated from the landing and the landing from the parking lot. Plaintiffs expert, however, disagreed and found that the uniform color, despite not violating a code regulation, created a “camouflage” effect. The trial court listened to both testimonies and viewed numerous photographs of the stairs from different vantage points. Additionally, the trial court noted that the plaintiff had visited Dyke several times before and used these stairs with no difficulties. While we are not unsympathetic to the plaintiff in light of the injuries he suffered, we find no manifest error in the trial court’s conclusion that Dyke Industries is not legally liable to plaintiff for this slip and fall. Accordingly, we affirm the judgment of the trial court.
 

 AFFIRMED.
 

 [1]
 

 . Plaintiff denied ever receiving a formal diagnosis, but this diagnosis appears in his medical records submitted as evidence. The same medical records reveal a history of fractures, though just how many plaintiff had suffered in his lifetime was disputed.
 

 [2]
 

 . Mr. Wilson testified that he is plaintiff’s grandson.
 

 [3]
 

 . Plaintiff denied taking Vicodin, stating that his doctor prescribed a different pain medicine. From plaintiff’s medical records in evidence, it appears that the plaintiff may have been prescribed the generic form of this drug or a different brand name, hence plaintiff's confusion on this issue.
 

 [4]
 

 . The Jefferson Parish Building Code of 1970 and the Life Safety Code.
 

 [5]
 

 .Mr. Gallardo exhibited much confusion, however, in his testimony regarding where the plaintiff fell. Initially, he affirmatively testified that plaintiff fell when he stepped off the last stair onto the landing. Later, after specific questioning by the court, he clarified that he was told the plaintiff fell as he stepped from the landing to the parking lot.