LOBRANO, Judge.
This appeal was lodged by the Louisiana Department of Transportation and Development (Highway Department) from a judgment rendered against it in favor of Mr. & Mrs. Jimmy Murphy for the death of their son Michael Murphy. The Highway Department contends the trial court erred in finding it at fault, and failing to find responsibility on the part of Coastal Contractors, Inc. (Coastal), the general contractor.[1] They also argue the contributory negligence of decedent. The Murphys answered the appeal asserting the trial court erred in failing to find joint and solido liability on the part of Coastal.
The issues presented for our review are as follows:
1. The liability of the Highway Department.
2. Whether Coastal should be held jointly liable with the Highway Department.
*26 3. Whether there was any contributory negligence on the part of decedent, Michael Murphy.
4. Whether the lower court judgment is excessive.
In April of 1979 the Highway Department entered into a contract with Coastal for repairs to the Chef Menteur Highway Bridge located on U.S. Highway 90. Among the provisions of the contract were certain specifications for the re-routing and detouring of Highway 90 traffic. The contract also provided for payment to Coastal of certain sums for the cost of signs and detour roads. The contract work required a complete re-routing or detouring of both east and west bound traffic off of Highway 90.
In the early morning hours of November 23, 1979 decedent was operating a 1978 Oldsmobile in an easterly direction on Highway 90 when he crashed through two warning barricades and collided with the counter weight of a huge crane that was situated across said highway. The driver was killed, and fortunately the rear seat passenger, Jill Gaddy, was not injured.
The trial court held the Highway Department responsible for the accident, relieving the contractor of any liability. The trial court reasoned that “[t]here were two substantial and material deviations from good engineering practice at this job site.” Those were the absence of effective channelization in detouring traffic, and the painting over the center and edge stripes of Highway 90 was an inadequate method of obliteration. The trial court further reasoned that the “duty to channelize detours on a highway is designed to protect the confused and even the inattentive driver.”
We find no manifest error in the factual findings of the trial judge.
The record reflects that east bound traffic was required to detour sharply to the right off permanent Highway 90. Although the Highway Department introduced evidence of barricades, warning signs and yellow flashing lights intending to warn motorists of construction activities, the evidence is also clear that the channelization of traffic off the highway was not a gradual one contrary to the requirements of the contract. In addition, the method used was not in conformity with the Highway Department’s own Manual on Uniform Traffic Control Devices, and the Louisiana Standard Specifications For Road and Bridges.[2]
The evidence also substantiates the factual conclusion that the center line stripe and edge strips of permanent Highway 90 were painted over rather than obliterated. Furthermore, the record supports the factual finding that a large overhead sign on Highway 90 which advised the normal eastbound traffic flow that they should veer to the left was not obliterated. The instructions on this sign were completely opposite of the detouring directions advising motorists to detour to the right.
We can summarize the factual findings of the trial court and this court as follows:
1. The channelization was not a gradual detour to the right off of Highway 90, but a sharp right turn indicated by signs perpendicular to the eastbound traffic.
2. The centerline markings and edge stripes were painted over rather than obliterated.
3. The large overhead sign which directed motorist one way when they were supposed to turn the opposite way was not obliterated.
With these factual findings we now discuss the liability of the various parties.
HIGHWAY DEPARTMENT
The expert testimony convinces this Court that the trial judge was correct in concluding that the conditions existing on Highway 90 were the cause of Michael Murphy’s death. The Highway Department argues that the warning signs and barricades were sufficient to warn the attentive motorist, and that the deviation from the normal method of channelization *27 did not create any hazard. We reject these arguments as they are not supported by the facts.
All of the experts agreed that the detour signing as well as painting over the stripes were not in conformity with the contract, the Manual on Uniform Traffic Control, and the Louisiana Standard Specifications for Roads and Bridges. Although we agree that nonconformity with these requirements does not constitute negligence per se, Norris v. State, 337 So.2d 257 (La.App. 3rd Cir.1976); Harkins v. State Dept. of Highways, 247 So.2d 644 (La.App. 3rd Cir.1971), writ den. 259 La. 741, 252 So.2d 449 (La.1971); it is clear to this court that the expert testimony and record as a whole substantiates the conclusion reached by Duaine T. Evans, an expert in Traffic operations, who testified:
“... there was an edge stripe that had led him (decedent) into the construction area that was supposed to have been obliterated...”
SjC ⅜ ⅝ ⅝ ⅝ ⅜!
“There was also a double yellow line leading straight ahead which he was not supposed to pay attention to, he was supposed to follow the double yellow to the right, so he couldn’t follow every instruction on this entire section, it was physically ... it was a physical impossibility.”
We add to that our own finding that one sign advised the motorist to veer to the left, and then another advised detouring to the right, adding to the confusion. Although the Highway Department argues that it was necessary to deviate from the normal channelization procedures because of the access problem to Fort McComb road,[3] this argument cannot lessen their responsibility for the safety of motorists on the heavier travelled Highway 90.
The Highway Department clearly has a duty to warn motorists of dangers created by road construction. Stephens v. State Through Dept. of Trans., 440 So.2d 920 (La.App. 2nd Cir.1983), writ den., 443 So.2d 1119 (La.1984). As our brethern of the Third Circuit recognized in Knotts v. Department of Highways, 395 So.2d 419 (La.App. 3rd Cir.1981), writs refused, 400 So.2d 669, 670 (La.1981), we are aware that the duty of the Highway Department to maintain highways in a safe condition are relaxed somewhat in connection with construction activities. This duty, however, is relaxed according to the reasonable necessities of the conditions. Knotts, supra.
We affirm the lower court’s decision holding the Highway Department negligent in this ease. The record substantiates that there was a serious breach of their duty to warn motorists of the dangers of the road construction. We find their negligence was both a cause in fact, and a legal cause of the injury. See, Sinitiere v. Lavergne, 391 So.2d 821 (La.1980).
COASTAL’S LIABILITY
Our jurisprudence is clear that:
“Any person or firm contracting with the highway department to repair a road likewise owes a duty to the public to perform the contract in such a manner as not to expose these using the roads to any dangers which could be prevented by the use of ordinary and reasonable care. This obligation on the part of the highway department and the contractor imposes the duty adequately to warn motorists of the existence of any dangers created by the road repairs.” Hale v. Aetna Casualty & Surety Co., 273 So.2d 860 (La.App. 2nd Cir.1973), at 862, writs refused 275 So.2d 867 (La.1973).
See also, Harrelson v. Travelers, 128 So.2d 254 (La.App. 3rd Cir.1961); Knotts v. State Department of Highways, supra.
Coastal argues that it did what the contract required, and that the Highway Department had the exclusive authority with respect to detouring and signing. We disagree. Although the contract itself is somewhat ambiguous with respect to who had control, we are convinced that Coastal breached the duty imposed by law on con *28 tractors doing highway repair work. We disagree with the trial court’s finding that the Highway Department had primary responsibility. Our conclusion is based on general negligence principles rather than an interpretation of the respective duties under the contract. Assuming arguendo that Coastal fulfilled each and every detail of the contract, they still owed a duty to the motoring public not to expose them to undue hazards. Knotts v. State Dept. of Highways, supra. We are of the opinion that the trial judge was in legal error in this regard.
Coastal created a hazardous situation by not obliterating the center line and edge stripes of Highway 90, and allowed that situation to exist even though it was confusing to the motorist. That hazardous condition was compounded by detouring traffic with a sharp right turn rather than a gradual channelization off the highway. The confusing overhead sign referred to earlier added to the dangers. And finally, the ultimate hazard was allowing a huge crane to remain across a highway that was admittedly poorly lit while the confusing conditions described above existed. In our opinion, the fact that the Highway Department may have tacitly approved all of the above does not relieve Coastal of its obligation to the public. See, Knotts, supra.
We must emphasize that it is our opinion a contractor doing highway construction work owes a duty to the general public sepárate and apart from its contractual obligations to the Highway Department. Although our conclusions may have been different if the contractor were somehow prevented from correcting a hazardous condition, we do not find that situation to exist in this case. Both the Department of Highways and Coastal created and allowed the conditions to exist, both had the ability to correct the situation and both must share responsibility.
DECEDENT’S CONTRIBUTORY NEGLIGENCE
Despite the strenuous argument by counsel for the Highway Department to the contrary, we find no contributory negligence on the part of decedent. There is no evidence of alcohol or drug abuse, nor is there any evidence decedent was speeding. Appellant argues, however, that decedent must have been inattentive not to see the existing barricades and signs, and thus should be precluded from recovery. This court will not assume the decedent was inattentive simply because an accident occurred “... as one is presumed to act in response to natural instincts of self preservation and not expose oneself to unnecessary risk of death.” Davila v. Southern Pacific Transportation Co., 444 So.2d 1293 (La.App. 5th Cir.1984), writ den. 447 So.2d 1079 (La.1984).
Even assuming arguendo that the decedent was inattentive, applying the simple “but-for” analysis of our Supreme Court in Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979), we still conclude that it does not bar recovery. See also, Quinn v. State, Through Department of Highways, 464 So.2d 357 (La.App. 3rd Cir. 1985), writ den. 467 So.2d 1134, 1136 (La.1985).
Although there is some merit to the argument that the awards are liberal, we do not find them so excessive as to warrant a reduction. See Reck v. Stevens, 373 So.2d 498 (La.1979).
Although the Murphys answered the appeal of the Highway Department by asserting the joint liability of Coastal, they did not appeal the judgment dismissing Coastal from their suit. Since the Highway Department is the appellant, they (the Murphys) by answer can only seek modification of the judgment as it relates to the Highway Department. La.C.C.Pro. 2133; Shelton v. Aetna Casualty and Surety Co., 334 So.2d 406 (La.1976).
Accordingly, we reverse that part of the lower court’s judgment dismissing the third party demand of the Highway Department and allow recovery against Coastal as a joint tortfeason for one-half of the amount awarded. In all other respects the judgment is affirmed. All costs of this appeal *29 to be paid by the Highway Department and Coastal.
REVERSED IN PART, AFFIRMED IN PART.

. The Highway Department asserted a third party claim against Coastal in the lower court.

. We note that both of these publications were made part of the contract.

. Fort McComb road is a lateral road adjacent to and intersecting Highway 90.