839 So.2d 51 (2002)
Clinton SCHREIBER
v.
JEWISH FEDERATION OF GREATER NEW ORLEANS, et al.
No. 2002-C-0992.
Court of Appeal of Louisiana, Fourth Circuit.
January 29, 2002.
Joseph F. LaHatte, Roderick Alvendia, New Orleans, LA, for Plaintiff.
Albert D. Giraud, Ginger K. Deforest, Ungarino & Eckert, L.L.C., Metairie, LA, for Defendants.
(Court composed of Chief Judge WILLIAM H. BYRNES III, Judge CHARLES R. JONES, and Judge JAMES F. McKAY III).
CHARLES R. JONES, Judge.
The relators, the Jewish Community Center and Scottsdale Insurance Company, seek supervisory review of a district court judgment denying their motion for summary judgment filed against the plaintiff, Clinton Schreiber. This lawsuit arises out of a personal injury action and the question of damages sustained during a basketball game held at the Jewish Community Center (hereinafter the "JCC"), which resulted in Mr. Schreiber being rendered a quadriplegic.

Procedural History
In his original petition, Mr. Schreiber alleged negligence in failing to: provide a proper ventilation system, maintain a safe playing surface, remedy an unsafe/hazardous condition, train employees in cleanup, and allowing the unsafe condition to exist for a reasonable period of time. Mr. Schreiber named as defendants, the Jewish Federation of Greater New Orleans, d/b/a Jewish Community Center, the Metairie Basketball League (hereinafter the "MBL"), Scottsdale Insurance Company, and XYZ Insurance Company. He subsequently amended his petition to drop the Jewish Federation as a defendant, and add the JCC as a defendant.
In response to Mr. Schreiber's petition, the JCC and Scottsdale Insurance Company filed a Motion for Summary Judgment alleging that there was no genuine issue of fact as to whether the purported defect, or the alleged breach of duty was the cause of *52 Mr. Schreiber's damages. The district court denied the motion and found that the evidence suggested that there were material issues of fact which precluded summary judgment. The relators, JCC and Scottsdale Insurance Company, then sought supervisory review of the district court judgment on the grounds that Mr. Schreiber failed to provide evidence demonstrating a duty on the part of the JCC to prevent the type of accident that occurred. This Court, subsequently, denied the writ application finding that the district court did not err in denying the motion for summary judgment.
The relators sought further review of the matter and filed a writ of certiorari with the Supreme Court. The court granted the writ application and ordered that the matter be remanded to this Court for briefing, oral argument, and opinion.

Facts
The following facts were taken from the deposition testimony of the parties and the witnesses:
In a letter dated February 15, 1993, the JCC entered into a contract with Dave Garretson, a representative of the MBL, for the rental of the JCC gymnasium. The letter specified the terms of the agreement and limited the players' access to the gym, the bathroom facilities, and the water fountains. The letter further stated that any damages occurring would be the responsibility of Mr. Garretson, including damages to the scoreboards. In an unsworn affidavit presented by the plaintiffs, Mr. Garretson asserted that the agreement was effective for a period of three months and that the terms were amended by subsequent oral agreements.
On June 24, 1997, Mr. Schreiber participated in a basketball game at the JCC with the MBL. During a second game, Mr. Schreiber struck his head against the knee of another player in an attempt to rebound the ball. He asserted that his feet slipped from underneath him in a backward direction as he leaned forward. Although Mr. Schreiber stated that he was unaware whether he slipped on the humidity of the gym floor or the sweat of the other players, he averred that he had slipped several times in the six weeks that he had played at the JCC.
Kenneth Chance, a referee during the game, testified that he was unaware of any moisture on the floor at the time of Mr. Schreiber's injury. Although the gym was air conditioned, Mr. Chance did recall that there was a large fan kept at one of the doors. However, Mr. Chance testified that he did not recall if the fan was in operation during the game. He further asserted that he was not aware that the JCC kept anyone at the games to assist in keeping the floor clean or dry.
Kathleen Kennair, who was the building manager and an exercise instructor at the JCC, testified that she did not notice anything on the floor at the time of Mr. Schreiber's injury and had not experienced problems with her footing on the gym floor. On the night of the game, she instructed the staff to keep the emergency exit doors closed in order to keep people on the street from having access to the facility. In an excerpt from her deposition presented by Mr. Schreiber, Ms. Kennair testified that she did not know if the ceiling exhaust fans or the three floor fans were in use on the night in question. Since the fans were operated from the athletic director's office, which was located outside the gym, she further testified that the members of the MBL did not have access to the controls, but could have asked someone on duty for assistance.
Harry Fraticelli, who played at the JCC two times prior to the accident, was also present on the night of Mr. Schreiber's *53 injuries. He testified that there were no cleaning supplies given to him or any of the other players to clean or dry the floor because of the wet and slippery conditions that were always present because of the heat, humidity, and playing conditions of the gym. He further testified that he never observed any JCC staff cleaning the floor before or during basketball games on the dates he played at the gym. Mr. Fraticelli also asserted that the ventilation and ceiling fans were not turned on; the emergency exits were kept closed; the shutters covering the windows were closed; only two floor fans were operational; and the majority of the windows were covered with padding used to cushion players coming off the backboards.
Gil Fried, an expert for the JCC, performed testing on the JCC gym floor. Mr. Fried testified that he did not use friction or coefficient testing because it was impossible to evaluate the floor as it existed at the time of the accident since the floor had been refinished, and he did not have the shoes of the plaintiff. Noting that a JCC engineer observed that the floor became more slippery when the humidity level decreased, Mr. Fried testified that there would be a greater likelihood of slipping if the humidity level was lowered. He further testified that when all the gym floor fans were fully operational, the temperature increased and the degree of humidity decreased. Mr. Fried also noted that the temperature of the gym and the degree of humidity exceeded the standards set by the American College of Sports Medicine, but those standards failed to take into account regional temperatures.
Neil Hall, an architect and civil engineer, performed wet and slip dry testing for Mr. Schreiber. Mr. Hall tested the area where Mr. Schreiber's accident occurred and another location ten feet away. While he testified that he could not simulate the exact conditions of a running player, Mr Hall noted in his deposition that the JCC floor could present a serious problem if it was wet. He further testified that with the windows on the side of the walls covered by mats, and the ceiling fans inoperable, it would be possible for moisture to condense on the gym floor. Mr. Hall testified that once moisture was on the ground, whether condensation or sweat, the wetness created a dangerous condition insofar as playing a basketball game. Mr. Hall averred that the problem would have been solved if there were proper ventilation and towel boys present to remove condensation from the floor.
Both sides presented additional expert testimony, including the deposition of a civil engineer from the Rimkus Consulting Group and the report of Dr. Leonard Lucenko.

Discussion
Appellate courts review the granting or denial of a motion for summary judgment de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, p. 7 (La.2/29/00), 755 So.2d 226, 230. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
La. C.C.P. art. 966(C)(2) provides that where the party moving for summary judgment will not bear the burden of proof at trial, his burden does not require him to negate all essential elements of the adverse party's claim, but rather point out that there is an absence of factual support *54 for one or more elements essential to the claim. If the adverse party fails to produce factual support as to any element, there is no genuine issue of material fact, and the movant is entitled to summary judgment as a matter of law. However, any factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and all doubt must be resolved in the opponent's favor. Willis v. Medders, 2000-2507, p. 2 (La.12/08/00), 775 So.2d 1049, 1050.
The JCC contends that Mr. Schreiber failed to provide any evidence that the alleged defect was the cause of the damages suffered by Mr. Schreiber or that the JCC had knowledge of any defect. In its first assignment of error, the JCC argues that it is precluded from liability as a result of the lease agreement with the MBL, and the fact that the JCC gymnasium was free from defect. Pursuant to La. C.C. Art. 2317.1, an owner/custodian will not be liable for damages unless there was a defect which the owner/custodian knew or should have known about, which caused the damage, and could have been prevented through an exercise of reasonable care.
La. R.S. 9:3221 provides that liability for a thing does not shift if there are defects that the owner knew or should have known about, but failed to remedy. La. C.C. Art. 2695 further states that the lessor implicitly guarantees against all vices and defects of a thing, and is liable to the lessee for any damages resulting from the defect, provided that the defect is not the fault of the lessee. To sustain damages, Mr. Schreiber must show that the JCC had knowledge of the defect.
In the instant case, the deposition testimony indicates that the JCC knew or should have known that the improper circulation in the gymnasium would cause build up on the wood floors. While it is inevitable that players will sweat during a basketball game, the deposition testimony presented by Neil Hall indicates that the covering of the windows and vents coupled with the inoperation of the ceiling fans could cause moisture to condense on the floor, and create a dangerous condition. Further, testimony by Gil Fried also indicates that the conditions at the JCC fell outside of the American College of Sports Medicine guidelines, with temperatures at 79.8 degrees and a humidity level at 77.2 percent when the ceiling fans were not in operation. Therefore, the depositions and expert testimony support the view that a question of material fact exists as to whether the JCC knew or should have known that the failure to maintain the ventilation system would have adverse consequences to those using the gym.
The JCC also argues that the language of the February letter was sufficient to preclude liability on their part. In the instant case, the only evidence of a lease agreement is a letter between the parties dated February 15, 1993. The letter indicates that it would serve as a contract between David Garetson and the JCC for the purpose of renting the gym, and specified the terms of the rental, as well as the condition that all other areas of the facility would be off limits to the players other than the water fountains and the bathrooms.
La. R.S. 9:3221 provides that a lessor who enters a contract where the lessee assumes liability may still be liable for any injury caused by the defect if there was knowledge of the defect. In Walker v. Self Service Storage and Miniwarehouses, Inc., 492 So.2d 210, 212 (La.App. 4th Cir. 1986), this Court held that "it is contrary to *55 public policy to allow a party to absolve itself of liability for injuries incurred through its negligent acts." Since the evidence presented by Mr. Schreiber's deposition indicates that the JCC should have been aware of the defect in the premises, there is a question as to whether there is a preclusion of liability pursuant to the February agreement.
Further, other deposition testimony indicates that the JCC maintained control of the areas affecting the ventilation system. Since these areas were off limits to the players and MBL representatives, it would seem that the ventilation system was controlled only by the JCC. Even if there was no shifting of liability to the MBL, the JCC had a responsibility to provide against defects in the gym, which would include maintaining proper air circulation. These issues of fact preclude the granting of summary judgment.
In their second assignment of error, the JCC argues that it had no duty to prevent the players from perspiring. Citing Sanville v. Archdiocese of New Orleans, 560 So.2d 622 (La.App. 4 Cir.1990), the JCC contends that "the duty of a lessor to protect invitees extends only to injuries from defects or vices in the premises." In the Mr. Schreiber's original petition, he alleged negligence and strict liability, which both may be analyzed under a duty-risk analysis. Cuevas v. City of New Orleans, 99-2542, p. 4 (La.App. 4 Cir. 6/21/00), 769 So.2d 82, 85. Pursuant to Guillory v. Foster, 634 So.2d 1372 (La. App. 3rd Cir.1994), he argued that "custody or garde can follow the owner, as opposed to the lessee or other possessor, of a thing if one is dealing with a structural design," claiming that the ventilation system is integral to the design of the JCC gymnasium.
Under the duty-risk analysis, it is necessary for Mr. Schreiber to show that the JCC's conduct was a cause in fact of the harm suffered, the JCC owed a duty of care to him, the JCC breached the duty, and the risk of harm was within the scope of protection afforded to him. Syrie v. Schilhab, 96-1027, pp. 4-5 (La.5/20/97), 693 So.2d 1173, 1176-1177.
Mr. Schreiber alleged negligence on the part of the JCC in failing to: provide a proper ventilation system, maintain a safe playing surface, remedy an unsafe/hazardous condition, train employees in cleanup, and allowing the unsafe condition to exist for a reasonable period of time. It also provided evidence of negligence and defective premises maintenance. The JCC's failure to properly maintain the ventilation system may be viewed as a cause in fact of Mr. Schreiber's accident if moisture forming on the floor due to the nonfunctioning system was a substantial factor in bringing about the harm that occurred. Although Mr. Schreiber hit his head on the knee of another player and the unavoidable sweating of the players contributed to the slippery floor surface, the JCC need not be the sole cause of the harm to be a cause-in-fact. Lasyone v. Kansas City Southern R.R., 2000-2628, p. 9, (La.4/3/01), 786 So.2d 682, 691.
The evidence put forth in Gil Fried's report indicates that when the humidity level decreased, the floor became more slippery. Neil Hall also testified in his deposition that the improper operation of the ventilation system would allow the formation of condensation. Due to the contrasting and defeating expert testimony as to what contributed to the slickness of the floor, as well as the inevitable sweating which occurs during a basketball game, it is difficult to say whether or not Mr. *56 Schreiber's accident would not have occurred had the ventilation system been operable. Given the contradictory evidence submitted by the parties, reasonable persons may differ as to whether Mr. Schreiber has shown that the JCC's failure to properly operate the ventilation system was a substantial factor in his accident. The issue should be heard before a trier of fact.
In assessing whether or not the JCC owed a duty to Mr. Schreiber, it is necessary to determine whether the likelihood of the harm times its magnitude outweighs the burden of preventing the harm. Pitre v. Louisiana Tech University, 95-1466, p. 9 (La.5/10/96), 673 So.2d 585, 590. In the instant case, there is evidence that there were a number of people slipping during the game, indicating that the harm was obvious and apparent. According to the expert deposition testimony of Neil Hall, the likelihood of slipping on moisture while playing on a gym floor is considerable. However, given that Mr. Schreiber's injuries rendered him a quadriplegic, the magnitude of the harm is arguably significant. Since the burden to prevent the harm, or to simply turn on the ventilation system and open the shutters, was small in comparison to the injury suffered, the evidence weighs in favor of the plaintiff.
The remaining factors in the duty-risk analysis also weigh in favor of Mr. Schreiber since there remains a question as to whether the JCC failed to present the gym in a condition free from defect. The defect was within the scope of the JCC's duty since the air ventilation system was a crucial element in the gym's use, and greatly affected whether or not the surface of the gym floor would be safe for players. The harm resulting from the failure to operate the system properly is also within the scope of the JCC's duty since the system was exclusively in the JCC's control and operated in an area not designated to the players.
We conclude that Mr. Schreiber presented sufficient evidence to create a genuine issue of material fact as to whether the JCC's failure to properly operate the system created an unreasonable risk of harm, a breach of the duty to protect those using the gym, and the harm suffered was within the scope of the JCC's duty.
In the JCC's third assignment of error, the JCC argues that MBL assumed liability for Mr. Schreiber's injuries by virtue of their February 1993 agreement. The agreement letter speaks for itself, and it does not resolve the question as to whether a material issue of fact remains as to the liability of the JCC.

DECREE
Thus, for the reasons herein stated, we grant the relator's writ application on remand, and deny relief.
ON REMAND, WRIT GRANTED; RELIEF DENIED.