# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 21-192


DEANNA SMITH

VERSUS

**STATE OF LOUISIANA THROUGH THE DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, J. B. JAMES CONSTRUCTION, LLC, AND FOUKE SAND & GRAVEL, LLC,**

**\*\*\*\*\*\*\*\*\*\***
ON APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2018-5856
HONORABLE MICHELLE M. BREAUX, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***
## JONATHAN W. PERRY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Chief Judge, Jonathan W. Perry and Charles G. Fitzgerald, Judges.

**Cooks, Chief Judge, dissents and assigns written reasons.**

**AFFIRMED.**

Carl J. Rachal
Bart Bernard
Bart Bernard Injury Lawyers
1031 Camellia Blvd.
Lafayette, LA 70508
(337) 989-2278
**COUNSEL FOR PLAINTIFF/APPELLANT**:
    Deanna Smith

Thomas G. Buck
Brett W. Tweedel
Blue Williams, L.L.P.
3421 N. Causeway Blvd., St. 900
Metairie, LA 70002
(504) 831-4091
**COUNSEL FOR DEFENDANTS/APPELLEES**:
    J. B. James Construction, LLC and Fouke Sand & Gravel, LLC

Matthew C. Nodier
David C. Bolton
Nodier Law Firm
8221 Goodwood Blvd., Ste. A
Baton Rouge, LA 70806
(225) 448-2267
**COUNSEL FOR DEFENDANT/APPELLEE**:
    State of Louisiana, Department of Transportation and Development

**PERRY, Judge.**

Deanna Smith ("Smith") appeals the trial court's judgment that dismissed her personal injury lawsuit against JB James Construction, LLC ("JB James") and Fouke Sand & Gravel, LLC ("Fouke") (collectively "Defendants"), on a motion for summary judgment. We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts of this case center on Smith's trip and fall on November 20, 2017, at the intersection of Verot School Road and Camellia Boulevard/Artisan Road ("the intersection") in Lafayette. At the time of Smith's accident, the intersection where Smith fell was part of a major construction site to improve Verot School Road.

The Louisiana Department of Transportation and Development ("LADOTD") had contracted with JB James to perform the construction work. LADOTD prepared the plans and specifications for the work. Included in the plans and specifications were the location for all signs, barricades, and cones that JB James was required to install; the plans and specifications included specific signage at the intersection. There was a sign on Artisan, alerting individuals that there was construction ahead and signs, barricades, and cones were in the intersection, including a "road closed" sign attached to a barricade.

Smith admitted that she was aware of the construction site at the intersection and that it had been under construction for some time. On the date of the accident, Smith, accompanied by her golden retriever, approached the intersection. As she walked across the intersection at a brisk pace, her foot caught on taut string[1] strewn across a portion of the roadway construction, causing her to trip and fall. As a result

---

[1] In the petition for damages, Smith references that the cause of her fall was "an ankle high cable across the roadway and/or sidewalk and adjacent roadside[.]" At various places in her deposition, Smith referred to it variously as a wire or as high tensile fishing line. In yet another part of her deposition, Smith identified the cable/line as being yellow and affixed to a traffic signal pole. Now, in her brief to this court, Smith says that she fell when she encountered a string. For consistency we will refer to the obstacle as a string.

of her fall to the concrete roadway, Smith injured her right elbow and underwent two corrective surgeries to address those injuries.

Smith filed a petition for damages on September 21, 2018, naming LADOTD as defendant.[2] On November 19, 2018, Smith filed an amending and supplemental petition, naming JB James, Fouke, Ernest P. Breaux Electrical, LLC ("Ernest P. Breaux"), and the Lafayette City-Parish Consolidated Government ("LCPG") as additional defendants. Smith's claims against LCPG were dismissed without prejudice on March 27, 2019, and her claims against Ernest P. Breaux were dismissed on September 10, 2019, with prejudice.[3]

On June 2, 2020, Defendants filed a motion for summary judgment, seeking the dismissal of Smith's claims against them because the alleged defect was open and obvious, and they were entitled to immunity under La.R.S. 9:2771. After Smith filed her opposition to the motion for summary judgment, the trial court heard oral argument. After considering the pleadings, evidence, and oral argument, the trial court granted Defendants' motion for summary judgment.[4]

Smith appealed urging two assignments of error:

(1) Whether JB James and Fouke were entitled to summary judgment on the grounds that the defect was open and obvious where Plaintiff testified, she never saw the string running across the road before she fell, and photographs show the string was difficult to see.

(2) Whether JB James and Fouke were entitled to immunity under Louisiana Revised Statutes § 9:2771 where evidence indicated a thin, hard to see string was running across a pedestrian walkway.

---

[2] Although LADOTD is a defendant in this litigation, it is not involved in this appeal.

[3] Breaux and LCPG are not involved in this appeal.

[4] The trial court did not state on what grounds it granted the Defendants' motion for summary judgment. Because we find the Defendants were entitled to summary judgment on the grounds that the defect was open and obvious, we will not discuss whether the Defendants were also entitled to immunity under La.R.S. 9:2771.

2

*Appellate Practice*

From the outset, Defendants urge us to disregard Smith's arguments because her brief does not reference specific page numbers of the record in support of her arguments and further fails to include a concise statement of the applicable standard of review for each assignment of error and issue for review. Smith has not responded to these asserted deficiencies.[5]

Uniform Rule—Courts of Appeal, Rule 2-12.4A(9)(a) and (b) states:

> The brief of the appellant shall contain, under appropriate headings and in the order indicated:
>
> . . . .
>
> 9. the argument, which shall contain:
>
> (a) appellant's contentions, with reference to the specific page numbers of the record and citations to the authorities on which the appellant relies,
>
> (b) for each assignment of error and issue for review, a concise statement of the applicable standard of review, which may appear in the discussion or under a separate heading placed before the discussion[.]

Uniform Rules—Courts of Appeal Rule 2-12.13 states that "[b]riefs not in compliance with these Rules may be stricken in whole or in part by the court, and the delinquent party or counsel of record may be ordered to file a new or amended brief." Thus, the appellate court has the discretion to impose a sanction for noncompliance with the Uniform Rules. The Louisiana Supreme Court in *U.S. Fire Ins. Co. v. Swann*, 424 So.2d 240, 244-45 (La.1982), (citations omitted) explained:

---

[5] "The appellant may file a reply brief, if he has timely filed an original brief, but it shall be strictly confined to rebuttal of points urged in the appellee's brief." Uniform Rules—Courts of Appeal, Rule 2-12.6. Even after these omissions were brought to light, counsel for the appellant has failed to respectfully provide this court with a reply brief to remedy these deficiencies. "Lawyers who advocate the claims and causes of their clients before courts and other tribunals should be zealous advocates for their clients." Frank L. Maraist, N. Gregory Smith, Thomas C. Galligan, Jr., 21 La. Civ. L. Treatise, Louisiana Lawyering § 14.1 (2021).

In recognition of the fact that procedural rules are merely to implement the substantive law, as well as the fact that appeals are constitutionally guaranteed (La. Const. art. V, § 5 and § 10), this Court has consistently held that appeals are favored in the law and should be maintained unless a legal ground for dismissal is clearly shown. An appeal is not to be dismissed for a mere technicality. Unless the ground urged for dismissal is free from doubt, the appeal should be maintained.

Even though it would be appropriate for this court to disregard Smith's arguments in these respects, *see Henry v. Henry*, 17-282 (La.App. 4 Cir. 10/18/17), 316 So.3d 876, we have exercised our discretion and will address them out of an abundance of caution. *See Gunderson v. F. A. Richard & Assocs.*, 09-1498 (La.App. 3 Cir. 6/30/10), 44 So.3d 779. Notwithstanding, as made evident below, Smith's failure to provide record citations has not eased our appreciation of this four-volume record.

*Summary Judgment--Breach of Duty*

"A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact[.]" *N. Am. Fire & Cas. Co. v. State Farm Mut. Auto. Ins. Co.*, 03-300, p. 3 (La.App. 3 Cir. 10/1/03), 856 So.2d 1233, 1235, *writ denied*, 03-3334 (La. 2/13/04), 867 So.2d 694. Appellate courts review motions for summary judgment de novo, using the same criteria as the trial court to determine whether summary judgment is appropriate. *Dunn v. City of Kenner*, 15-1175 (La. 1/27/16), 187 So.3d 404. "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action[.]" La.Code Civ.P. art. 966(A)(2). "The procedure is favored and shall be construed to accomplish these ends." *Id*. Pursuant to La.Code Civ.P. art. 966(A)(3), a court will grant a motion for summary judgment "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." *See also Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880.

4

In *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751 (citations omitted), the Louisiana Supreme Court explained:

> A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." Simply put, a "material" fact is one that would matter on the trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits.

Summary judgment "is not a substitute for trial on the merits, and it is inappropriate for judicial determination of subjective facts, such as motive, intent, good faith or knowledge that call for credibility evaluations and the weighing of the testimony. In deciding a motion for summary judgment, the court must assume that all of the affiants are credible." *Tillman v. Eldridge*, 44,460, pp. 13-14 (La.App. 2 Cir. 7/15/09), 17 So.3d 69, 78 (citation omitted).

There are two theories of liability available to a plaintiff who claims she was injured as a result of the condition of a thing: negligence, under La.Civ.Code arts. 2315 and 2316, and strict liability, under La.Civ.Code art. 2317. Under both theories of liability, a plaintiff must prove that the condition of the thing presented an unreasonable risk of harm, or was defective, and that this condition of the thing was a cause-in-fact of her injuries. *Seal v. State Farm Fire & Cas. Co.,* 00-2375 (La.App. 4 Cir. 3/20/02), 816 So.2d 868, *writ denied,* 02-1083 (La. 6/14/02), 817 So.2d 1160. Both theories are analyzed under the duty/risk analysis. *Schreiber v. Jewish Fed'n of Greater New Orleans,* 02-992 (La.App. 4 Cir. 1/29/02), 839 So.2d 51, *writ denied*, 03-613 (La. 6/6/03), 845 So.2d 1089. "The duty-risk analysis is employed on a case by case basis." *Daye v. Gen. Motors Corp.,* 97-1653, p. 7 (La.9/9/98), 720 So.2d 654, 659. Under this analysis, the plaintiff must prove five different elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of

care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Christy v. McCalla*, 11-0366 (La. 12/6/11), 79 So.3d 293.

> On motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. *See* La. C.C.P. art. 966(D)(1); *see also Schultz v. Guoth*, 2010-0343 (La. 1/19/11), 57 So.3d 1002, 1006.

*Larson v. XYZ Ins. Co.*, 16-745, p. 7 (La. 5/3/17), 226 So.3d 412, 416.

The existence of a duty is a question of law. *Peterson v. Gibraltar Sav. & Loan,* 98-1601, 98-1609 (La. 5/18/99), 733 So.2d 1198.

In the present case, Defendants do not dispute that they had custody of the construction site at the time of the accident. LADOTD contracted with Defendants to perform major construction work to improve Verot School Road, including the intersections, and provided them with plans and specifications for the work. Smith's accident occurred at the intersection within the construction zone.

In general, the owner or occupier of land has a duty to keep the property in a reasonably safe condition. *Giorgio v. Alliance Operating Corp.,* 05-2 (La. 1/19/06), 921 So.2d 58. This includes a duty to discover any *unreasonably dangerous conditions* on the premises and either correct the condition or warn potential victims of its existence. *Madden v. Saik,* 511 So.2d 855 (La.App. 4 Cir. 1987), *writ denied*, 514 So.2d 431 (La.1987). Moreover, one doing construction work has a duty to properly label, mark, or barricade places in a construction site that present an unreasonable risk of harm to a passerby. *Martin v. Boh Bros. Constr. Co., LLC,* 05-1300 (La.App. 4 Cir. 6/7/06), 934 So.2d 196. Notwithstanding, a pedestrian has a

6

duty to see that which should be seen and is bound to observe his course to see if his pathway is clear. *Hutchinson v. Knights of Columbus, Council No. 5747*, 03-1533 (La. 2/20/04), 866 So.2d 228.

In cases such as the present one, the facts and surrounding circumstances of each case control and the test applied requires the consideration of whether the construction site was maintained in a reasonably safe condition for persons exercising ordinary care and prudence. In such instances, the courts have adopted a risk-utility balancing test to determine whether such a condition is unreasonably dangerous, wherein the trier of fact balances the gravity and the risk of harm against the individual and societal utility and the cost and feasibility of repair. *See Bufkin v. Felipe's La., LLC*, 14-288 (La. 10/15/14), 171 So.3d 851.

The courts have created the risk-utility balancing test to a consideration of four pertinent factors: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature. *Id.*

The utility of Defendants' activities in this case is not disputed. Undergoing road repairs and renovations to a main roadway and intersections is necessary and desirable.

The second element of the risk-utility balancing test focuses on whether the allegedly dangerous or defective condition was obvious and apparent. If the facts of a particular case show that the complained of condition should be obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff. *Pitre v. La. Tech Univ.,* 95-1466, 95-1487 (La. 5/10/96), 673 So.2d 585, *cert. denied*, 519 U.S. 1007, 117 S.Ct. 509 (1996).

7

In her original and supplemental petition for damages, Smith alleged that Defendants caused her injuries in the following non-exclusive particulars:

a) By failing to provide adequate maintenance on the roadway in question;

b) By failing to provide adequate inspections and repair of the roadway in question;

c) By creating an unreasonably dangerous condition(s) to exist by placing a cable/obstacle in such a manner that a pedestrian walking along the area would encounter the hazard, leaving the dangerous condition for unreasonable length of time, failing to place any warning/signage/flags noting of the hazardous condition, and any other unreasonably dangerous conditions proved at trial;

. . . .

f) By allowing for unreasonably dangerous conditions to exist on the roadway for unreasonable lengths of time, including stretching an ankle high cable across the roadway and adjacent roadside, and any other unreasonably dangerous conditions proved at trial[.]

In their answer to Smith's original and supplemental petitions, Defendants denied these allegations.[6]

In their motion for summary judgment, Defendants argue that Smith has no evidence to show that they breached any duty that may have been owed to her. They contend that an unreasonably dangerous condition did not exist for which they owed a duty of care to Smith under the circumstances. Furthermore, they argue that even if an unreasonably dangerous condition existed at the construction site, they posted warnings, and the presence of the string was open and obvious.

---

[6] For clarity, we note that subparagraph c) of Paragraph 6 appears only in Smith's original petition. As noted above, JB James and Fouke were not named defendants in the original petition. They were, however, added as defendants in Smith's supplemental and amending petition. Although Smith did not specifically restate subparagraph c) in her supplemental and amending petition, her supplemental and amending petition incorporated subparagraph c) by reference. Thus, we find the allegations of subparagraph c) are properly before us.

From the outset, Smith argues that the determination of whether a defect is open and obvious is often not appropriate for summary judgment. We find no jurisprudence to support that assertion.

To the contrary, in a series of three cases, the Louisiana Supreme Court has held that, absent any material factual issue, summary judgment procedure can be utilized to determine whether a defect is open and obvious and thus fails to present an unreasonable risk of harm. *See Rodriguez v. Dolgencorp, LLC*, 14-1725 (La. 11/14/14), 152 So.3d 871; *Allen v. Lockwood*, 14-1724 (La. 2/13/15), 156 So.3d 650; and *Bufkin*, 171 So.3d 851. Accordingly, we find that Defendants' motion for summary judgment was a proper procedural vehicle for the trial court to address the issue of whether the defect in the present case was open and obvious.

In support of their argument, Defendants addressed the issue of Smith's burden to show their breach of duty in their memorandum and attached Smith's deposition and various photographs that Smith provided of the construction at the intersection where she fell which particularly showed barricades.[7] Additionally, they attached the affidavits of Jeff James ("James"), the owner of JB James, and Prentice Don Young ("Young"), JB James's project manager for the Verot School Road Project.

In James's affidavit, he stated, among other things, that: (1) JB James's work was performed in accordance with the plans and specifications provided by LADOTD, including the placement and location of all required signage and barricades; (2) based on JB James's construction experience, it had no reason to

---

[7] From what we have been able to glean from the record, Scott Smith, Deanna Smith's husband, took these photographs on his cell phone, and they were provided to Defendants during discovery. As noted on the photographs, "Quality of original in poor condition." Our review of those photographs confirms that they are grainy, dark, and in most respects are indecipherable. In opposition to the motion for summary judgment urged by Defendants, Smith neither deposed Mr. Smith nor obtained an affidavit from him. Accordingly, we have no knowledge of when he took the photographs or his personal description of what he observed.

believe that complying with the plans and specifications provided by LADOTD would create a hazardous condition; and (3) the plans and specifications did not call for or include a "designated place for pedestrians to traverse the intersection" and no such place existed in the area of the construction site at the intersection of Verot School Road and Camellia Blvd./Artisan Road.

Young's affidavit stated, among other things, that: (1) he was the Project Manager for the Verot School Road Project; (2) the plans and specifications set forth the requirements for warning signs and barricades for the project, including at the intersection of Verot School Road and Camellia Blvd./Artisan Road; (3) Exhibit B-1 attached to his affidavit is a true and correct depiction of the signage plat that was part of the plans and specifications provided by LADOTD; (4) JB James complied with all signage and barricades required in the plans and specifications; (5) pursuant to the plans and specifications, signs and/or barricades were placed on Artisan Road leading to Verot School Road, on Verot School Road in the area of the intersection with Camellia Blvd and Artisan Road, and on Camellia Blvd. which included construction ahead signs and multiple road closed signs; (6) daily inspections of the signs and barricades were conducted to ensure that all of the required signs and barricades were present and in their correct location; (7) on November 20, 2017, the date of Smith's accident, he performed the inspections of the signs at 7:20 a.m. and again at 3:45 p.m.; on each inspection all signs and barricades were present and in their correct location, including the signs and barricades at the intersection of Verot School Road and Camellia Boulevard/Artisan Road; (8) he attached a true and correct copy of the traffic control inspection for November 20, 2017; (9) the barricades, signs, and cones depicted in the three attached photographs to plaintiff's deposition were present and in the same location of November 20, 2017 when he conducted his afternoon inspection at 3:45 p.m.; (10) the type III barricade in

10

photograph attached as Exhibit 4 to plaintiff's deposition contained a large "Road Closed" sign that would have faced Smith as she took her path across Verot School Road; and (11) the plan and specifications did not call for or include a "designated place for pedestrians to traverse the intersection" and no such place existed in the area of the construction site at the intersection of Verot School Road and Camellia Blvd./Artisan Road.

Smith's deposition testimony shows that she was very familiar with the construction work, that the work had been ongoing for a long time, that her fall took place at approximately 4 p.m. on November 20, 2017, and that she regularly crossed this intersection as part of her routine brisk walks. She also acknowledged that there was an alternative route available to her.

Although Smith neither filed her own affidavit nor any other affidavits or any other evidence in opposition to Defendants' motion for summary judgment, she relied in her opposition memorandum on the following points from her deposition: (1) she did not dispute that she was aware there was a construction site at this intersection; (2) she does not dispute that she would routinely traverse this intersection almost daily while walking her dog; (3) on the day of the accident there was no work actually being performed at this section of the construction project, and there were no workers present; (4) at the time of the accident, she was walking briskly; and (5) when she encountered the cable/string, her foot was caught on the obstruction, causing her to trip and fall to the concrete roadway.

As regards the presence of construction warning signs, Smith testified that she did not remember if any of the large signs and barricades were present on the day of the accident. When a party opposing a motion for summary judgment presents her own self-serving testimony, but that testimony contains significant discrepancies, the general rule that a court must accept such testimony as credible on a motion for

11

summary judgment is inapplicable. *See Hines v. Garret*, 04-806 (La. 6/25/04), 876 So.2d 764. The present case is just such a case. The photographs Smith herself provided the Defendants and identified in her deposition showed numerous warnings, barricades, and cones present. Particularly revealing is the photograph utilized to signify where she fell in the construction zone—her notation indicates that she fell right next to a large three-tiered barricade.[8]

It cannot be denied that it was incumbent upon Smith to identify the line that tripped her. In her deposition, Smith examined Exhibit 2, one of the photographs she provided, generally referenced the line in the photograph as being yellow, high tensile fishing line, and remarked that it was hard to identify on the dark, grainy photograph. In her brief, Smith asserts that "the string blends in with the roadway and was very obscure, making it difficult to see." After examining Exhibit 2, the photograph most relied upon by Smith, we find that the difficulty of seeing the line is attributable to the darkness and poor quality of the photograph, not because it blended in with the roadway.[9] On this basis, we find Smith's reliance on *Daigrepont v. Shardan, Inc.*, 19-1083 (La.App. 1 Cir. 10/14/20) (unpublished opinion),[10] a case that concluded a genuine issue of fact existed regarding whether the variation in

---

[8]  For the first time in her brief to this court, Smith attached an affidavit from Patrick Reed, the person who allegedly tended to her after she fell. In his affidavit, Reed referenced the string and included three photographs. Coinciding with the filing of her brief, Smith presented this court with a motion to supplement the record, including Reed's affidavit and photographs. JB James and Fouke opposed the motion to supplement the record. In an unpublished opinion, a panel of this court denied Smith's motion, finding that neither the affidavit nor the photographs had been submitted to the trial court at the hearing on the motion for summary judgment. *Smith v. State of La. through the Dep't of Transp. & Dev.*, 21-192 (La.App. 3 Cir. 5/12/21).

[9]  Moreover, we note that the record does not contain any particularized evidence about who placed the string in the construction zone, when it was placed, how long it remained in place, what were the properties of the string, and what its use was. More information about this central issue would have been readily available had Smith deposed the Defendants--she did not.

[10] In *Daigrepont*, the record contained poor-quality black and white photographs that had little evidentiary value. On the other hand, there were also color photographs which better delineated the respective colors of the patio and the parking lot. Unlike *Daigrepont*, the record now before us contains only poor-quality color photographs which are generally undecipherable and offer little or no details.

12

color between the patio and parking lot was unreasonably dangerous, is distinguishable. Nevertheless, we believe Smith's testimony is sufficient to establish the string's presence in the construction zone.

However, against that backdrop, Smith argues that "the warning signs would have only alerted [her] and other pedestrians that there was construction occurring in the area. The signs would not have advised that there was a tripping hazard running across the roadway." Therefore, we next must examine Smith's contention that the Defendants owed a duty to further warn about the presence of the yellow tripping hazard.

To support her argument, Smith, without any record citation or argument relative to the issue to support her assertion,[11] states in her brief that as she "approached the intersection of Camellia Boulevard and Verot School Road, she attempted to cross the intersection on Verot School Road, at a place designated for pedestrians to traverse the intersection." Smith contends this presented a genuine issue of fact which contradicted Defendants' affidavit evidence that no such pedestrian path existed. Thus, she argues that the presence of this pedestrian path through the construction zone created a need for the Defendants to further warn of this unreasonable danger.

Smith admitted in her deposition that prior to this construction project, pedestrians could press a button to cross Verot School Road to reach Camellia Boulevard. However, she also stated in her deposition that this crossing button had been disabled when construction began. Instead, to support her assertion about the existence of a pedestrian pathway, Smith pointed to the presence of "a little gravel" that purportedly connected dug-up Verot School Road with the concrete that had

---

[11] "All assignments of error **and issues** for review must be briefed. The Court may consider as abandoned any assignment of error **or issue** for review which has not been briefed." Uniform Rules—Courts of Appeal, Rule 2-12.4 (emphasis added). Although we could deem this issue abandoned, out of an abundance of caution, we have chosen to address it.

13

been poured for the new lane construction in the intersection. When pressed for elaboration at her deposition on this issue, this colloquy between defense counsel and Smith occurred: "Q. And why to do you say that this was the designated place for people to travel, to traverse the intersection" "A. It didn't have anything blocking it saying don't go this way."

As provided in La.Code Civ.P. art. 967(B) (emphasis added):

> When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavit or as otherwise provided above, *must set forth specific facts showing* that there is a genuine issue for trial.

In the present case, Smith relied upon photographs to assert a specific fact—the presence of "a little gravel" to establish a designated pedestrian pathway. On de novo review, we find the photographs that Smith relies upon to support her contention are of such poor quality that neither the presence of "a little gravel" nor its size and composition can be seen, and her answer at her deposition, consisting solely of circular reasoning, presents no support for her assertion that a designated pedestrian walkway existed.

Once again, Smith is left with her own self-serving testimony—testimony that also recognized the pedestrian crossing button at the intersection had been disabled when construction began. Such admission is internally contradictory to her present assertion of the presence of a pedestrian pathway and is lacking in potentially available evidentiary support. This causes us to conclude that the general rule that a court must accept such testimony as credible on a motion for summary judgment is inapplicable. *See Hines*, 876 So.2d 764.

In stark contrast, the Defendants provided two affidavits that stated the construction contract's plan and specification did not include a "designated place for pedestrians to traverse the intersection" and "no such place existed in the area of the

14

construction site at the intersection of Verot School Road and Camellia/Artisan."
Even considering those affidavits, Smith has presented no evidence that the construction contract provided otherwise,[12] and she did not depose the Defendants to further explore her contention. Moreover, Smith has failed to present any evidence that, even if such a pedestrian pathway was not included in the construction contract, it appeared that pedestrians enjoyed at least implied permission to cross through the construction site. At no point in her deposition did Smith contend that the Defendants' workers observed her or any other pedestrians crossing through the construction site at this intersection at any time. *See Shafer v. State, through Dep't of Transp. & Dev.*, 590 So.2d 639 (La.App. 3 Cir. 1991).

In accordance with the law and jurisprudence referenced above, the Defendants, having assumed custody of the construction site at the intersection of Verot School Road and Camellia/Artisan, would have been liable for any unreasonably dangerous condition it created. However, the evidence presented on the motion for summary judgment established that the Defendants properly placed construction warning signs ahead of and in the construction zone and that these warning signs and the construction activity were obvious and apparent. Moreover,

---

[12] *Compare Clarkston v. Louisiana Farm Bureau Casualty Insurance. Co.*, 07-158, 07-1282, p. 15 (La.App. 4 Cir. 7/2/08), 989 So.2d 164, 177, n. 7, *writ denied*, 08-1768 (La. 10/31/08), 994 So.2d 539, which stated:

> The *Manual on Uniform Traffic Control Devices* ("MUTCD"), federal guidelines adopted by the Louisiana Legislature in La. R.S. 32:235, were also incorporated in the Sparrow Street contract. See, *Plaintiff's Exh.* 10. MUTCD provides minimal safety requirements for DOTD's compliance. Specifically, with respect to pedestrian travel in construction zones, MUTCD provides that "[p]edestrians should not be led into direct conflicts with mainline traffic moving through or around the work site." It further states that a construction site should accommodate pedestrians by providing them "with a safe, convenient travel path that replicates as nearly as possible the most desirable characteristics of sidewalks or footpaths." *Id.* at pp. 21–24. It also provides "... every effort should be made to separate pedestrian movement from both work site activity and adjacent traffic ... When pedestrian movement through or around a work site is necessary, the aim of the engineer should be to provide a separate, safe footpath without abrupt changes in the grade or terrain." *Id.*

because the Defendants were neither required to provide a pedestrian walkway nor were they shown to have knowledge of such activity, they had no duty to more specifically warn of the yellow construction string. Thus, Smith, a pedestrian who chose to briskly walk through a construction zone, had a duty to see that which should be seen and is bound to observe whether the chosen path was clear. *See Hutchinson*, 866 So.2d 228.

After the Defendants showed that Smith would be unable to bear her burden to prove an essential element of her negligence action, namely that the Defendants owed her a duty, then the burden shifted to her to demonstrate that she would be able to meet the burden at trial. *See Schultz v. Guoth*, 10-343 (La. 1/19/11), 57 So.3d 1002. Despite this burden, Smith failed to produce any affidavit, deposition, or other admissible evidence that the Defendants did have a duty to further warn pedestrians, such as she, who were aware of this construction.

> In *Bufkin*, 171 So.3d at 858 (footnote omitted), the supreme court stated:
>
> As stated by LSA–C.C.P. art. 967(B), when a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise, must set forth specific facts showing that there is a genuine issue for trial. *See Luther v. IOM Company LLC,* 13–0353 (La.10/15/13), 130 So.3d 817, 822; *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.,* 09–1633 (La.4/23/10), 35 So.3d 1053. Once a motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. *Dauzat v. Curnest Guillot Logging Inc.,* 995 So.2d at 1187 (citing *Babin v. Winn–Dixie Louisiana, Inc.,* 00–0078 (La.6/30/00), 764 So.2d 37, 40). *See also Alexander v. Toyota Motor Sales, U.S.A.,* 13–0756 (La.9/27/13), 123 So.3d 712, 714 ("All elements must be proven to succeed on this claim; therefore, a lack of factual support for just one element renders summary judgment in favor of [the defendant] appropriate.").

Because Smith failed to show, in opposition to the Defendants' motion for summary judgment, that she would be able to bear her burden at trial to prove a duty

was owed by Defendants, summary judgment in favor of the Defendants was properly granted by the trial court.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court granting the motions for summary judgment brought by JB James Construction, LLC and Fouke Sand & Gravel, LLC, dismissing the claims of Deanna Smith against them with prejudice.  Costs of this appeal are assessed to Deana Smith.

**AFFIRMED.**

DEANNA SMITH

VERSUS

STATE OF LOUISIANA THROUGH THE DEPARTMENT OF
TRANSPORTATION AND DEVELOPMENT, J. B. JAMES
CONTRUCTION, LLC, FOUKE SAND & GRAVEL, LLC, AND STATE OF
LOUISIANA, DEPARTMENT OF TRANSPORTATION AND
DEVELOPMENT

**COOKS, Chief Judge, Dissents.**

I respectfully dissent from the majority opinion affirming the trial court's grant of the motion for summary judgment. I find there are, at a minimum, genuine issues of material fact as to whether a thin, difficult to see string running across the roadway presented an open and obvious defect such that the Defendants owed no duty to warn Plaintiff of it.

There is no dispute that Defendants had custody of the construction site on the date of the accident. The law is clear that "[i]t is the duty of one with custody or garde of a thing presenting an unreasonable risk of harm to properly and adequately label, mark, or barricade places in that site so as to provide adequate and reasonable warning to persons using the area." *Dupree v. City of New Orleans*, 99-3651 (La. 8/31/00), 765 So.2d 1002, 1013. "If the facts of a particular case show that the complained-of condition should be obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff." *Dauzat v. Curnest Guillot Logging Inc.*, 08-528, pp. 4-5 (La. 12/2/08), 995 So.2d 1184, 1186-1186    The degree to which a danger may be observed by a potential

victim is one factor in the determination of whether the condition is unreasonably dangerous. *Id.*

Defendants argued that even if an unreasonably dangerous condition existed at the construction site, warnings were posted, and that the presence of the string was open and obvious. The majority first notes that Plaintiff was incorrect to argue "that the determination of whether a defect is open and obvious is often not appropriate for summary judgment." I disagree. While the Louisiana Supreme Court has held summary procedure *can* be used to determine whether a defect is open and obvious, it does not allow for the trial court to weigh evidence and make factual conclusions. Simply because summary judgment *can* be a proper procedural vehicle for the trial court to address the issue of whether a defect is open and obvious, does not render immaterial the rules pertaining to summary judgment. Several conclusions reached by the majority I find was inappropriate in this case.

The majority concludes because Plaintiff testified she did not recall if any of the large signs and barricades were present on the day of the accident, this absence of memory is a legitimate reason to discard the long standing principal that we must accept her testimony as credible. I note she did not say in her testimony that the signs were not present, simply that she did not recall seeing them. To conclude these are "significant discrepancies," sufficient enough to assign the lack of credibility to all her testimony is a leap too far.

After concluding the photographs relied upon by Plaintiff were of poor quality, the majority assigns them zero evidentiary value. Such factual determinations are wholly inappropriate at the summary stage of proceedings. The law is clear that in motions for summary judgment all doubts are to be resolved in favor of the non-moving party. *Hines v. Garrett*, 04-806 (La. 6/25/04), 876 So.2d 764. It is not inconceivable that a trier of fact could conclude that the difficulty in

2

seeing the string in the photographs was due to its size, location and taint, not simply because the photographs were of "poor quality." Defendants have not disputed the string was present at the scene or that Plaintiff tripped over the string. Their argument has been the string was open and obvious. Plaintiff should be allowed to put forth evidence to the contrary, albeit only her testimony and the photographs. A jury should then be allowed to weigh the evidence, not the judge below and not two members of this court.

The majority states Plaintiff's admission that she knew the pedestrian crossing button had been disabled was "internally contradictory to her present assertion of the presence of a pedestrian pathway." This supposed contradiction, the majority asserts, is another basis to render Plaintiff's deposition testimony as uncredible. I am unable to discern any contradiction between Plaintiff's knowledge that the pedestrian crossing button was disabled and her assertion that a pedestrian pathway had been created over the time period of the construction project. This position again requires the panel members to weigh evidence and then skew it in favor of Defendants.

The majority opinion erroneously, in my view, focuses on Defendant's introduction of two affidavits that state the construction contract's plan and specifications did not include "a designated place for pedestrians to traverse the intersection" and "no such place existed in the area of the construction site." Simply because the construction contract's plans and specifications did not include a designated place for pedestrians to traverse the intersection does not mean one was not created over time during the construction project by the constant and predictable use by pedestrians. Plaintiff testified there had been a pedestrian walkway created over time that she and others used to traverse the construction site. The majority's dismissal of this testimony is a credibility call that cannot be made at the summary

3

judgment stage of proceedings. Moreover, the jurisprudence has established that "a contractor doing highway construction work owes a duty to the general public separate and apart from its contractual obligations to the Highway Department." *Murphy v. State*, 475 So.2d 24, 28 (La.App. 4 Cir. 1985). Thus, simply because the contract plans and specifications did not specifically call for the creation of a "designated place for pedestrians to traverse the intersection'" does not eliminate the contractor's responsibility to protect the safety of the general public. The addition of a designated pedestrian pathway to this construction site, may have eliminated the hazard that Plaintiff encountered in this case.

Defendants also relied heavily on the argument that Plaintiff was familiar with the area and knew there was ongoing construction. The law is clear a contractor doing construction work on a road has a duty to mark, barricade, or warn the public of conditions in the construction site which pose an unreasonable risk of harm. *Dowden v. Mid State Sand & Gravel Co. Inc.*, 95-231 (La.App. 3 Cir. 11/2/95), 664 So.2d 643. Such an inherently factual determination depends on the particular facts and circumstances of each case. *Boudreaux v. Farmer*, 604 So.2d 641 (La.App. 1 Cir.1992), *writ denied*, 605 So.2d 1373 (La.1992). Whether "warnings are reasonable and adequate depends on location of the danger, the nature of the road and the general situation and circumstances." *Woods v. State ex rel. Louisiana Dept. of Transp. and Development*, 37,185 (La.App. 2 Cir. 8/14/03), 852 So.2d 1109, 1121 (citing *Dowden*, 664 So.2d 643). I find the myriad of factual conclusions resolved by the trial court, and the majority herein, is wholly inappropriate at the summary judgment stage of proceedings. As Justice Genovese cautioned in his dissent in *Murphy v. Savannah*, 18-991 (La. 5/8/19), 282 So.3d 1034, 1042, "[w]e must be careful to strictly follow the rules pertaining to summary judgment proceedings. Today's summary judgment is tantamount to a third type of trial. It is a trial by

4

affidavit, wherein a litigant is denied two inherent and fundamental rights - the right to a day in court and a right to trial by jury." I would therefore, reverse the grant of summary judgment and allow Plaintiff her day in court.